**Jeanette M. BEHNEN, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. 77–771 C (A).**

United States District Court, E. D. Missouri, E. D.

Feb. 17, 1978.

---

Jerome J. Duff, James E. Heckel, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

HARPER, District Judge.

JEANETTE M. BEHNEN has petitioned this District Court for judicial review of an adverse decision on two claims rendered against her by the Secretary of Health, Education and Welfare. Plaintiff's first claim is for disability insurance benefits pursuant to Title II of the Social Security Act, as amended, 42 U.S.C. § 401 et seq. The second is a claim for supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. § 1381(a). Judicial review of a final decision of the Secretary under both Title II and Title XVI is provided for in Section 405(g).

Plaintiff filed her application to establish disability on February 25, 1975. This was done to acquire disability insurance benefits as provided in § 423. The application was considered and reconsidered by the Secretary and ultimately denied.

On December 19, 1975, plaintiff filed her application for supplemental security income disability benefits as provided in Section 1381(a).

On May 20, 1976, a hearing was held at which the claimant, her mother, and a vocational expert, testified. Plaintiff was represented by counsel, James E. Heckel. On June 16, 1976, the Administrative Law Judge rendered a decision unfavorable to the plaintiff. The Appeals Council affirmed this decision on April 21, 1977. Plaintiff filed an appeal of this decision in this Court. Cross motions for summary judgment have been filed with memoranda attached thereto.

JEANETTE BEHNEN is a forty-four year old woman, born on June 19, 1933. She was forty years old when she claims to have become unable to work. Plaintiff's applications for benefits state the reason for her inability to work to be back problems, or back injury.

Plaintiff completed the tenth grade and has had no further training in a vocation. Claimant's longest employment experience is in factory work. Her most recent experience of any duration was in a hospital.

Plaintiff's first permanent employment started in August of 1956 as a labeler in a shoe factory. She worked there for about sixteen years, performing various tasks including that of a packer. At other times, at other factories, claimant has run a screw machine, assembled parts and inspected materials. In 1971, plaintiff obtained a job as an X-ray aid at a St. Louis, Missouri hospital. The job involved heavy lifting, and she injured her back twice while lifting patients. The last injury to her back is said to be the final blow to plaintiff, and the injury that finally resulted in her disability. After this last injury, for which plaintiff was hospitalized for four days, plaintiff ceased working, with one short exception. Plaintiff attempted, for about a month, to make calls from her home for a charity organization. She stopped doing this due to the pain caused by constant sitting required to make the telephone calls.

Plaintiff lives in an apartment across the hall from her mother. She has no children at home to care for, and she is divorced. Her household activities consist of cooking meals for herself, some light housework and doing her laundry. In order to wash her clothes, claimant must walk one flight of steps carrying her clothes to the basement. Besides all the steps necessary to get the laundry in and out of the washing machine, she must hang the wet clothes on a clothes line in order for them to dry. When plaintiff is unable to perform her household maintenance activities and for those which she never performs, her mother or daughter-in-law do the work.

Plaintiff testified at the hearing that she no longer participates in recreational or social activities, and that she no longer attempts to drive. She further testified that she stood five feet four and one-half inches tall. She stated that her present weight is about 210 pounds. She weighed around 150 pounds in July of 1973. She opined that this was a thyroid problem and did not aggravate her back trouble.

Plaintiff's mother, who testified at the hearing, stated that some mornings her daughter cannot get out of bed. She further stated that plaintiff is in bed for three days at a time. She said her daughter cries often and is depressed.

Both physical and mental medical evidence were included in the record for the Administrative Law Judge to consider. Claimant was hospitalized twice at Lutheran Medical Center for injuries to her back caused by lifting patients in her job as an X-ray aid. The report from the hospital for the first stay between September 4, 1973 and September 15, 1973, reveals a diagnoses of low back derangement and cervical syndrome. Her treating physician was J. Otto Lottes, M.D. Treatment consisted of physical therapy, traction and back manipulation. Her second period of hospitalization was between February 11, and February 19, 1974 at the same institution. This visit resulted in a diagnosis of back strain and obesity. Similar treatment was prescribed and carried out.

J. Otto Lottes, M.D., claimant's treating physician, submitted a report for consideration. His diagnosis was one of low back derangement. His reports indicate that he felt that claimant was exaggerating the pain from her back injury. He advised her twice that she could return to light work, but not her regular work (Tr. 127).

The second physician to report on claimant was Anver Tayob, M.D. After an extensive physical examination of the claimant, Dr. Tayob concluded that plaintiff's orthopedic disability was minimal (Tr. 137).

A third physician, Eli R. Shuter, conducted a neurological evaluation of claimant. Dr. Shuter's diagnosis stated that plaintiff

was disabled from bending, lifting, standing, and prolonged sitting. This finding was based on medical history and an examination less thorough than Dr. Tayob's. For Workmen's Compensation Act purposes he found claimant's disability to be ten percent of a man.

The only report covering plaintiff's mental condition was from Walter L. Moore, M.D., directed to claimant's attorney. He conducted a neuropsychiatric examination of the claimant. Various tests conducted precipitated numerous overreactions. The rather extensive report concluded that due to the fact that plaintiff was tense, anxious, apprehensive, and depressed, she was totally unable to be gainfully employed. His prognosis for improvement was guarded (Tr. 163).

At the hearing, a vocational expert also testified. When asked to assume that claimant could not sit, could not stand, had to lie down often and could not return to her former employment, the expert felt that claimant was virtually unemployable. When asked to assume, based on Drs. Lottes and Tayob's testimony, that claimant could do sedentary work, the expert stated that plaintiff would be able to perform jobs as an assembler in shoe, paper, box, pencil and electronics industries; packer, wrapper and checker in the shoe industry, and inspector in the shoe and electronics industry.

On these facts, the Administrative Law Judge made the following findings:

(1) Claimant met the special earnings requirement on January 26, 1974, her alleged onset date, and continues to meet the special earnings requirement at least through the date of this decision.

(2) Claimant's principal occupations were hospital x-ray aide, and labeler and packer in the shoe industry, and she has also worked as a screw machine operator, punchpress operator, assembler and inspector.

(3) Claimant has lumbosacral strain, cervical syndrome, occasional headaches, occasional pain and stiffness in her fingers and psychoneurosis, mixed type.

(4) Claimant's combined physical and mental impairments are not so severe as to have prevented sedentary work on or prior to April 1, 1974, and through the date of this decision.

(5) Claimant's pain in her lower back, hips and pelvic area radiating down her legs, and in her neck and arms, is not so severe as to have prevented sedentary work on or prior to April 1, 1974, and through the date of this decision, and her complaints of intolerable pain are not supported by the evidence considered as a whole.

(6) Claimant was capable and is capable of performing such sedentary work as assembler in the shoe, paper, box, pencil and electronics industries, checker in the shoe industry, packer and wrapper, and inspector in the shoe and electronics industries on or prior to April 1, 1974, and through the date of this decision.

(7) Claimant was not under a "disability" as that term is defined under the Act for a continuous period of 12 months or more on or prior to January 26, 1974, and through the date of this decision.

■ The claimant, of course, is burdened with the proof of her disability and entitlement to insurance benefits under the Social Security Act. *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975). Further, plaintiff must show that she is so functionally impaired that she is precluded from engaging in substantial gainful employment. *Russell v. Secretary of Health, Education and Welfare*, 540 F.2d 353 (8th Cir. 1976).

■ This Court is not empowered to review this decision *de novo*. *Hoffman v. Ribicoff*, 305 F.2d 1 (8th Cir. 1962). Our inquiry must be directed to finding whether or not the decision was supported by substantial evidence as commanded by *Miller v. Finch*, 430 F.2d 321 (8th Cir. 1970).

The Eighth Circuit has stated:

. . . that to meet the statutory definition of disability the claimant must fall within the threefold requirement "(1) that there be a medically determinable physical or mental impairment which can be expected to [result in death of which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment." (Citing other cases.)

In reviewing the record to ascertain whether there is substantial evidence to support the Secretary's finding that a claimant has not met this threefold requirement the court should look at four elements of proof:

(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age. (Citing other cases.)

*Timmerman v. Weinberger, supra.* As these relate to the physical impairment, we find that there was substantial evidence to support the Secretary's finding that plaintiff was not disabled from engaging in substantial gainful activity.

The plaintiff's own treating physician stated that claimant should return to light work, but not her former job. This physician's report showed that claimant tended to exaggerate her physical problems, due to delayed reaction in responses to pinpricks. This is a valid consideration in the overall evaluation by the trier of facts. *Brasher v. Celebrezze*, 340 F.2d 413, 418 (8th Cir. 1965).

We find ourselves seriously concerned about Dr. Moore's report on claimant's medical condition. He unqualifiedly states that claimant is unable to work in her present mental state. We recognize that impairments, both physical and mental, must be considered together in evaluating a disability claim.

It is clear that a single expert's opinion on the ultimate question of the extent of disability is not binding on the Secretary. However, it is equally clear that a finding contrary to uncontroverted expert opinion will not stand. *Berven v. Gardner*, 414 F.2d 857, 861 (8th Cir. 1969).

We feel that the opinions of Drs. Lottes, Tayob and Shuter, the latter, a neurological specialist, overcome the findings of Dr. Moore. The determination by the Administrative Law Judge that claimant's combined physical and mental impairments are not so severe as to have prevented sedentary work would seem to be supported by these doctors' observations. He further seems to be supported in the answers given to the situation by the vocational expert based upon the hypothetical questions furnished him.

Although the Secretary has not so indicated in his findings, we cannot help but observe that claimant has an obvious weight problem. She is some forty-three years old, carrying 210 pounds on a sixty-three inch frame. Even Dr. Moore found her to have marked pelvic femoral obesity. This physical situation is obviously not compatible with good health. She is apparently some eighty pounds overweight, and has been repeatedly advised to diet by at least three physicians (Tr. 63). A claimant who willfully fails to follow prescribed treatment which could be expected to restore her ability to work, is not under a disability. *Havens v. Weinberger*, 477 F.2d 138 (5th Cir. 1973); *Osborne v. Cohen*, 409 F.2d 37 (6th Cir. 1969).

We conclude that the Secretary's examiner is by law the trier of the facts, and the District Court is bound thereby, if said findings are supported by substantial evidence. *Vineyard v. Gardner*, 376 F.2d 1012 (8th Cir. 1967). The various opinions of the physicians indicated, that are contained in this record, we feel, furnish the Secretary with the necessary substantial evidence upon which he based his decision against the claimant.

Therefore, this Court finds that the record in this case revealed the claimant to

have had a full and fair hearing, coupled with adequate administrative consideration in accordance with existing statutes and case law. We conclude that the Secretary had substantial evidence upon which to render his decision, that the plaintiff was not under a "disability" as required by the Social Security Act. Further, it is the finding of this Court and it is hereby ordered that the Secretary's motion for summary judgment be, and is, hereby sustained and the claimant's motion for summary judgment is overruled. The Clerk of this Court will make the appropriate order as indicated.