Maria del Carmen Adrade
VALDEZ, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. C 83–20085 RPA.

United States District Court,
N.D. California.

Feb. 25, 1985.

N. Michael Rucka, Salinas, Cal., for plaintiff.

Chris G. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## OPINION

AGUILAR, District Judge.

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff seeks review of a final decision of the Secretary of Health and Human Services disallowing plaintiff's application for disability insurance benefits under §§ 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423. Plaintiff moves for summary judgment reversing the Secretary's decision, or, in the alternative, for remand. Defendant, in turn, moves for

summary judgment affirming the decision of the Secretary.

Having received, read, and considered all the papers submitted by counsel, the Court finds that the Secretary's decision must be affirmed.

## I

Proof of disability requires a showing of "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An "impairment" for purposes of this definition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In addition, a person will be found to be disabled only if his impairment is of such severity as to preclude not only performance of his previous work, but also, considering his age, education, and work experience, performance of "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ Under the law of this circuit, the burden is upon the claimant to prove disability within the meaning of the Social Security Act. *Giampaoli v. Califano,* 628 F.2d 1190, 1193 (9th Cir.1980); *Hall v. Secretary of Health, Education and Welfare,* 602 F.2d 1372, 1375 (9th Cir.1979). After a claimant establishes a *prima facie* case of disability by showing inability to perform his or her previous employment, however, the burden shifts to the Secretary to prove that the claimant can engage in other types of substantial gainful work that exist in the national economy. *Giampaoli,* at 1192; *Johnson v. Harris,* 625 F.2d 311, 312 (9th Cir.1980); *Hall,* at 1375. In meeting this burden, the Secretary must take into consideration the requirements of specified jobs as well as the claimant's age, education, and background. 42 U.S.C.

§ 423(d)(2)(A); *Johnson,* at 312; *Hall,* at 1377.

■ The Secretary's findings of fact are conclusive on this court if supported by substantial evidence. *Johnson,* at 312; *Hall,* at 1374. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Walker v. Mathews,* 546 F.2d 814, 818 (9th Cir.1976), *quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and "the reviewing court must 'look at the record as a whole and not merely at the evidence lending support to a finding.'" *Cox v. Califano,* 587 F.2d 988, 989–90 (9th Cir. 1978), *quoting Walker,* at 818. This restriction on judicial review applies to the Secretary's findings of fact as well as reasonable inferences drawn therefrom. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir.1965).

With these standards in mind, the Court has reviewed this case and concludes that the Secretary must be affirmed.

## II

Plaintiff, Maria del Carmen Andrade Valdez, is 50 years old. She completed a third or fourth grade education in Mexico (T.R. 138, 57), is illiterate in Spanish, her native language, and is unable to communicate in English (T.R. 133). Plaintiff was employed as an agricultural field worker from 1971 until 1980 (T.R. 85).

On July 28, 1979, plaintiff slipped and fell while at work, twisting and thereby injuring her right knee. On July 30, 1979 plaintiff began treatment with Dr. Pemberton, a chiropractor. After conservative treatment, plaintiff continued to experience pain and was referred in August of 1979 to Dr. Robert Badke, an orthopedist (T.R. 105). On September 27, 1979 plaintiff was hospitalized by Dr. Badke at the Alisal Community Hospital for an arthroscopic examination of her right knee. The arthroscopy revealed severe chondromalacia of the femoral condyles and patella (T.R. 105).

Plaintiff continued to have symptoms and on March 27, 1980, Dr. Badke performed an arthroscopic mechanical resection of the chondromalacia on the undersurface of her right patella. At this time Dr. Badke restricted plaintiff's activities and felt that she could not return to her previous occupation as a field laborer. Dr. Badke attributed her inability to return to her former job to the "progressive nature of the chondromalacia and her gross overweight" (T.R. 109). Dr. Badke felt that plaintiff's knee condition was aggravated by her field labor job.

In June of 1980 Dr. Badke stated that he regarded plaintiff as falling under Category D of the State Worker's Compensation work capacity guidelines (T.R. 109). Category D refers to a disability precluding repeated bending, stooping and heavy lifting. The individual thus classified is given a 25% standard disability rating and is considered to possess 50% of their pre-injury capacity for bending, stooping and heavy lifting. This classification would approximate a light work residual functional capacity rating as defined in 20 C.F.R. § 404.1567(b) of Subpart P of Regulation No. 4. Dr. Badke initially rated plaintiff's complaints of pain as "minimal," (T.R. 109), and then later as "moderate to moderately severe" (T.R. 108).

On November 3, 1980, plaintiff was seen by Dr. David Chittendon, an orthopedist, for examination of her right knee, which continued to cause her discomfort. Dr. Chittendon was retained to evaluate plaintiff in connection with Worker's Compensation proceedings. Examination revealed limited forward flexion of the spine, arthritis, and slight bilateral *genu valgum* (knock-knee). Dr. Chittendon remarked that plaintiff was not much improved from her prior surgeries. He also noted that plaintiff would probably benefit considerably from a weight reduction program, more so than from further surgery, although future total knee joint reconstruction could not be discounted (T.R. 128). X-rays revealed "fairly significant" degenerative changes in her right knee due to osteoarthritis. Dr. Chittendon also noted that

plaintiff was "relatively limited to, at best, sedentary or light work as defined by the California Division of Industrial Accidents" (T.R. 129). Dr. Chittendon rated plaintiff's subjective complaints as "slight at rest, increasing to moderate with activity" (T.R. 129).

Plaintiff first applied for Supplemental Security Income (SSI) and Disability Insurance Benefits in November of 1981 (T.R. 53, 65). Plaintiff claimed disability due to hypertension and right leg problems. Plaintiff further claimed her disability began on 3/30/80, after her second arthroscopic procedure. Both her SSI and disability applications were denied in February 1982, after a determination that she had a residual functional capacity for light work and therefore was capable of substantial gainful activity (T.R. 57).

On January 25, 1982, Dr. Badke noted in a letter to the Department of Social Services that plaintiff's condition was "being aggravated by her overweight and also by her *valgus* deformities of both knees" (T.R. 105). Dr. Badke further noted his feeling that 70% of plaintiff's problems pre-existed her July 1979 injury, and he attributed at least 50% of her continuing problems to her overweight condition (T.R. 105). Dr. Badke reported that plaintiff continued to be afflicted with chondromalacia and osteoarthritis, both of which were exacerbated by her obesity. Dr. Badke also stated that plaintiff "continued to fail to heed the advice for weight-loss," (T.R. 106) which he felt would expedite her recovery.

In February, 1982, plaintiff was admitted to the Natividad Medical Center for a cholecystectomy, which was performed by her regular physician, Dr. Fabriciano Vela. She recovered from this surgery without complications.

Plaintiff filed a Request for Reconsideration in March of 1982, which was denied in April, 1982.

In May 1982 plaintiff was evaluated by Shoreline Occupational Services, a division of Goodwill Industries, to determine her vocational rehabilitation potential. It was

noted that plaintiff was unable to sit or stand for more than 10–20 minutes at a time due to pain and numbness in her lower extremities. Plaintiff also used a cane for walking. The conclusion of the evaluation was that plaintiff experienced and complained of pain to such an extent as to "make competitive employment unfeasible at this time" (T.R. 141).

From June 30, 1982 until July 16, 1982, plaintiff sporadically attended a work adjustment program set up by Paradigm Consultants (T.R. 142). Plaintiff was not able to fully participate in this vocational rehabilitation program due to frequent illnesses and complaints of pain and discomfort. In a July 16, 1982 report to plaintiff's counsel, Paradigm Consultants noted that plaintiff was motivated to return to work, but was not physically able to do so at that time.

### III

In June of 1982 plaintiff filed a Request for Hearing before an Administrative Law Judge (ALJ), claiming total disability beginning March 30, 1980. Plaintiff's claim was again denied on December 29, 1982. The ALJ determined that there was substantial evidence to find that plaintiff was not disabled, based on the medical records and testimony of a qualified vocational expert witness. The expert concurred with the statements made by Drs. Badke and Chittendon that plaintiff was capable of sedentary to light work given her physical condition (T.R. 129, 164). The expert testified that plaintiff's former occupation could be classified as unskilled, medium to heavy work, and he agreed that plaintiff would not be able to return to her job as an agricultural field laborer. He concluded, however, that there were many jobs in the sedentary to light work categories (as defined by C.F.R. §§ 404.1567(a) and (b) of Subpart P of Regulations No. 4) which plaintiff would be able to perform given her limitations.

The ALJ further found that plaintiff's subjective reports of pain and numbness were not supported by the medical records. In addition to knee discomfort, plaintiff complained of "pain in her lower back and radiation of the pain in the right lower extremities" (T.R. 104). In his 1980 examination of plaintiff, Dr. Chittendon remarked that she had "no problems with her back" (T.R. 117), and results of a 1982 examination by Dr. Vela indicate that plaintiff's spine was "unremarkable" (T.R. 117). It is possible that plaintiff's low back symptoms did not surface until after she had been examined by Drs. Chittendon and Vela, or that the physicians were simply not looking for evidence of back pathology. Dr. Badke's records, however, mentioned plaintiff's complaints of low back pain (T.R. 104, 106, 169), and also the possibility of discogenic disease (T.R. 106) X-rays taken in September, 1983 revealed "osteoporosis and some evidence of disc space narrowing" (T.R. 169). Additionally, Dr. Badke makes reference to the existence of peripheral neuropathy on plaintiff's right side, although the record does not link the neuropathy to a problem in plaintiff's back. Peripheral neuropathy is a disorder of the peripheral nerves which is most often associated with alcoholism and/or poor nutrition. *Melloni's Illustrated Medical Dictionary*, p. 332, (1979). The ALJ therefore determined that plaintiff was not disabled given the medical evidence, her residual functional capacity, age, education and work experience.

### IV

On March 1, 1983 plaintiff filed a Request for Review of the ALJ's decision. In the accompanying brief, plaintiff referred to the discovery by Shoreline Occupational Services of a hand-eye coordination deficit that plaintiff contended changed her residual functional capacity rating. Plaintiff argued that this discovery could enable the ALJ to objectively determine that plaintiff was disabled because the alleged deficit would not allow her to be competitive in the job market. Her coordination problem apparently caused her work pace to be slow.

The Appeals Council rejected plaintiff's Request for Review on April 25, 1983 (T.R. 24–25), stating that plaintiff failed to meet

the requirements for review as enumerated in §§ 404.970 and 416.1470 of Social Security Administration Regulations Nos. 4 and 16 (C.F.R. §§ 404.970 and 416.1470).

The cause was brought before the Court and remanded to the Secretary of Health and Human Services for further administrative action on December 14, 1983. The matter again came on for hearing before the ALJ in March of 1984, when it was once more determined that plaintiff was not disabled. Plaintiff appealed this decision, and on July 19, 1984 the Appeals Council adopted the decision of the ALJ, denying SSI and disability insurance benefits to plaintiff. Plaintiff and defendant once again filed motions for summary judgment in accordance with Fed.R.Civ.P. 56, in October of 1984.

### V

This appeal presents three issues. First, plaintiff contends that the ALJ improperly applied the medical-vocational guidelines, known as Grids, to her situation. The Grids are found at 20 C.F.R., pt. 404, subpt. P., Appendix 2. Plaintiff bases this contention on the alleged existence of the hand-eye coordination deficit discovered by Shoreline Occupational Services (T.R. 139). Second, plaintiff maintains that the decision of the ALJ in favor of the Secretary was not based on substantial evidence. Finally, plaintiff maintains that she is entitled to remand based on the discovery of new medical evidence about her knee.

### 1. *Grids.*

Prior to 1978, the ability of a claimant to return to a prior occupation was determined based on medical evidence as well as the testimony of a vocational expert. In 1978 the Secretary promulgated medical-vocational guidelines, or Grids, for determining the disability of applicants for benefits. In 1983, the United States Supreme Court upheld the use of the Grids, holding that their use "does not conflict with the Social Security Act nor are the guidelines arbitrary or capricious." *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1953, 76 L.Ed.2d 66 (1983). According to *Heckler,* 104 S.Ct. at 1955, the Grids can be applied when "a claimant's qualifications correspond to the job requirements." When a claimant's "capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered." *Heckler, supra,* at n. 5. The plaintiff argues that the ALJ should not have relied on the Grids, but rather should have sought the opinion of a vocational specialist given that she believes she does not fit squarely within the perimeters of the Grids. Plaintiff bases this argument on her alleged hand-eye coordination deficit and inability to sit for extended periods of time, and her need for a cane to walk.

Considering the record as a whole, the Court finds no medical evidence to substantiate plaintiff's hand-eye coordination deficit. The only evidence pertaining to this alleged deficiency is in the form of a report filed by Shoreline Occupational Services. Both Drs. Vela and Badke treated plaintiff over many years, both conducting thorough examinations, yet neither found the alleged coordination problem. The record does not indicate that plaintiff was aware of her alleged coordination deficiency before she was evaluated by Shoreline Occupational Services, and it is therefore quite conceivable that neither Drs. Vela nor Badke had any reason to look for a coordination problem. However, the fact remains that the record does not contain any medical evidence of this alleged deficiency.

The ALJ is not under an obligation to give great weight to a self-serving statement made by a claimant which is not supported by objective medical findings. *Maounis v. Heckler,* 738 F.2d 1032, 1034 (9th Cir.1984); *Coats v. Heckler,* 733 F.2d 1338, 1340 (9th Cir.1984); *Hall v. Secretary of HEW,* 602 F.2d 1372, 1377 (9th Cir.1979). In regards to this deficit, two physicians failed to make note of its existence, although a vocational consultant did find the alleged problem. The Court is of the opinion that the reports of two physicians should be accorded greater weight

than the findings of a vocational consultant. Accordingly, the Court finds that the Grids were correctly applied to plaintiff's situation.

■ Plaintiff has requested a remand so that a vocational specialist can be questioned as to her hand-eye limitations. During the hearing before the ALJ, a qualified vocational expert was examined (T.R. 164). The expert testified regarding the availability of work for plaintiff. Although the expert did not assign a specific residual functional capacity (RFC) rating to plaintiff, the record indicates that the expert relied on the sedentary to light work classifications provided by plaintiff's physicians. There was no medical evidence of a hand-eye coordination deficit in the record, thus there was no need for the expert to address himself to that alleged non-exertional limitation. *Odle v. Heckler,* 707 F.2d 439 (9th Cir.1983). The expert's recommendations regarding possible employment for plaintiff were properly based upon the medical evidence in the record. *Embry v. Secretary of HEW,* 626 F.2d 93, 95 (9th Cir.1980); *Kornock v. Harris,* 648 F.2d 525 (9th Cir. 1980). Given the lack of medical evidence, a remand for the consideration of testimony by another vocational specialist as to plaintiff's alleged hand-eye coordination problem is not necessary.

### 2. *Substantial evidence.*

The ALJ must consider the extent to which plaintiff's obesity contributed to her impairments. Plaintiff is significantly obese as she is only 5'2" tall and weighs approximately 200 pounds. The record indicates that obesity was frequently cited as a factor in the continuation of plaintiff's knee problems (T.R. 105–108, 128). Dr. Badke at one point felt that if the plaintiff were to lose a considerable amount of weight she would most likely recover from her injury and surgeries (T.R. 107). Dr. Badke repeatedly prescribed that plaintiff lose weight, yet according to the records she did not. Dr. Chittendon stated that a weight reduction program would be of considerably more value than further surgery

on plaintiff's knee (T.R. 128). Dr. Vela also commented on plaintiff's obesity in his records.

■ The ALJ found that plaintiff's obesity was a contributing factor in her physical condition (T.R. 163, 166). Impairments that can be reasonably remedied by treatment cannot function as the basis for a finding of disability. *Stillwell v. Cohen,* 411 F.2d 574 (5th Cir.1969); *Henry v. Gardner,* 381 F.2d 191 (6th Cir.1967). Additionally, "a claimant who willfully fails to follow prescribed treatment which could be expected to restore her ability to work, is not under a disability." *Behnen v. Califano,* 444 F.Supp. 202, 206 (E.D.Mo.1978); *Havens v. Weinberger,* 477 F.2d 138 (5th Cir.1973); *Osborne v. Cohen,* 409 F.2d 37 (6th Cir.1969). The record indicates that plaintiff's knee problems are aggravated by her obesity, and although not stated directly, it can be inferred that obesity is at least exacerbating, if not causing the radiating low back pain plaintiff claims to experience.

Plaintiff also complains of substantial pain. "It may not be possible to prove that the claimant suffers from the symptoms she alleges; however, such proof is not required. Rather it is sufficient that clinical tests establish the existence of medical conditions sufficiently serious as to be capable of causing the pain and [numbness] alleged." *Karp v. Schweiker,* 539 F.Supp. 217, 220 (N.D.Cal.1982). In the record presently before the Court, the medical evidence does not appear to clinically support plaintiff's complaints of debilitating pain and numbness. Dr. Badke did make reference to an x-ray which revealed "possible discogenic disease" (T.R. 104), however, this diagnosis was merely speculative. In connection with plaintiff's low back pain, the x-ray was the only clinical evidence mentioned in the records. Standing alone, the x-ray cannot be considered substantial evidence. *Brissette v. Schweiker,* 566 F.Supp. 626 (E.D.Mo.1983). Both Dr. Badke and Dr. Chittendon rated plaintiff's pain at slight to moderately severe, depending on the activity she engaged in. (T.R.

108, 129). Plaintiff was diagnosed as suffering from degenerative arthritis, among other things, yet apparently neither physician thought that this condition would cause plaintiff more than moderately severe pain. The mere existence of arthritis is not disabling *per se. Brissette, supra,* at 634. Also, the physicians repeatedly noted that given her medical condition plaintiff was still fully capable of performing light to sedentary work. Plaintiff's complaints of disabling pain and numbness were supported by the vocational consultants at Shoreline Occupational Services, who relied only on plaintiff's subjective statements to reach their conclusion. Similar support was not found in the medical records.

 Pain can be disabling in and of itself, *Benson v. Matthews,* 554 F.2d 860 (8th Cir.1977); *Murphy v. Gardner,* 379 F.2d 1, 7 n. 8 (8th Cir.1967); *Mark, supra,* and the ALJ must consider the subjective complaints and credibility of the claimant as well as the medical evidence to determine whether or not disability exists. *McLaughlin v. Secretary of HEW,* 612 F.2d 701 (1980) (quoting *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). An inability to work without pain, however, is insufficient to show disability. *Wren v. Weinberger,* 390 F.Supp. 507 (D.C.Kan. 1975). "Claimant's subjective complaints may be shown to be exaggerated by any inconsistency in claimant's testimony and all other circumstances in the case." *Brand v. Secretary of HEW,* 623 F.2d 523, 526 n. 3 (8th Cir.1980). Plaintiff claimed she was unable to sit or stand for any length of time due to pain. In a December 29, 1982 decision on the facts of the case at bench, the ALJ remarked that, "At the hearing, the claimant showed no signs of any impairment when she became interested in what was happening. At other times, she seemed to rather ostentatiously limp, stand and display the use of a cane" (T.R. 164). This quote indicates an inconsistency in plaintiff's reports of debilitating pain. In this situation the ALJ appropriately supported his opinion regarding the credibility of plaintiff's complaints with facts. *Mur-*

*ray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983). The necessity of plaintiff's continued use of a cane was likewise not supported by the medical reports.

The ALJ therefore determined that plaintiff's pain was not disabling. Although the record indicates that plaintiff is impaired by her pain, this Court finds that the decision of the ALJ is supported by substantial evidence.

### 3. *Newly discovered evidence.*

Finally, plaintiff claims that she is entitled to a remand because of the discovery of new evidence concerning her knee. The existence of a loose body in plaintiff's right knee was discussed at the ALJ hearing in March, 1984, and cannot, therefore, be considered newly discovered evidence. Plaintiff is not entitled to a remand.

### *Conclusion*

Considering the record as a whole, this Court finds that the decision of the Secretary was supported by substantial evidence. Accordingly, the court affirms the decision of the ALJ and enters summary judgment for the defendant.