**Robert JONES, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. C–84–0605 EFL.**

United States District Court,
N.D. California.

April 29, 1987.

---

Kim Malcheski, Malcheski, Parker & Randolph, San Francisco, Cal., for plaintiff.

Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant.

MEMORANDUM DECISION

LYNCH, District Judge.

## I. GENERAL OVERVIEW

Robert Jones ("plaintiff") brought this action, pursuant to the Procedural Order for Social Security Review Cases filed February 14, 1984. Plaintiff seeks review of a final decision by the Appeals Council dated June 9, 1986, which found plaintiff disabled as of July 18, 1983. This matter is before the Court on plaintiff's motion for summary judgment and on defendant's cross-motion for summary judgment.

### A. Statement of Facts

Plaintiff was born on June 24, 1934. He worked for a coffee company from 1958 to 1978 where he performed a variety of jobs, including assistant foreman of shipping and receiving, coffee roaster and forklift operator. In 1977, Jones injured his back at work and was unable to work between October 1977 and May 1978. He returned to work briefly in May 1978 but left after two months because of severe back pain. Jones was involved in a serious automobile accident in May 1981 in which he suffered a fractured left knee and tore his medial collateral ligament.

### B. Procedural History

Plaintiff initially filed an application for disability insurance benefits on May 29, 1981. (TR: 71–74, 82–83.) The Social Security Administration ("SSA") denied plaintiff's application. On review of this determination, the Administrative Law Judge ("ALJ") found plaintiff's impairments to be non-severe and affirmed the SSA. The Appeals Council also affirmed. This Court reversed the ALJ's finding of non-severity and remanded for further consideration on the disability issue. *Jones v. Heckler*, 597 F.Supp. 210 (N.D.Cal.1984).

On remand, after a supplemental hearing, the ALJ applied Rule 201.18 of the Medical-Vocational Guidelines, (20 C.F.R. pt. 404, subpart P, app. 2) and concluded that plaintiff was not disabled until July 18, 1983. (TR: 199.) The Appeals Council issued a final decision on June 9, 1986 affirming the ALJ's decision, except for a minor word change.

## II. DISCUSSION

Plaintiff challenges the ALJ's finding of nondisability before July 18, 1983 and instead claims that the onset date of disability should be May 1, 1981, the date Jones was admitted to San Francisco General Hospital after the automobile accident. The task of this Court is to determine whether there is substantial evidence in the record to support the ALJ's decision and whether the ALJ applied the proper legal standards. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985); 42 U.S.C. section 405(g).

As explained below, the ALJ misapplied the Medical-Vocational Guidelines when making his disability determination. This case is therefore remanded so that the ALJ may properly evaluate plaintiff's impairments. To avoid further delays in the resolution of the issue of plaintiff's disability, the Court will discuss the determination procedure in some detail.

### A. The Medical-Vocational Guidelines

When determining whether work exists in the national economy that a claim-

ant can perform, the ALJ may apply the Medical-Vocational Guidelines ("the guidelines") in lieu of taking the testimony of a vocational expert, provided these guidelines accurately describe the claimant's particular limitations. *Heckler v. Campbell,* 461 U.S. 458, 462 & n. 5, 103 S.Ct. 1952, 1954 & n. 5, 76 L.Ed.2d 66 (1983); *Fife v. Heckler,* 767 F.2d 1427, 1430 (9th Cir.1985); *Gallant v. Heckler,* 753 F.2d 1450, 1456–57 (9th Cir.1984). The guidelines describe only "major functional and vocational patterns": age, education and work experience. 20 C.F.R. pt. 404, subpart P, app. 2, section 200.00(a). If the guidelines fail to accurately describe the claimant's particular abilities and limitations, the ALJ cannot rely on them alone to determine whether or not a claimant is disabled. *Gallant,* 753 F.2d at 1456; *Stone v. Heckler,* 722 F.2d 464, 468 (9th Cir.1983).

▪ The ALJ found that Jones had the residual functional capacity ("RFC") to perform sedentary work and applied medical-vocational Rule 201.18 (20 C.F.R. pt. 404, subpart P, app. 2), which directed a conclusion of "Not Disabled." However, in addition to his physical impairments which reduced plaintiff's RFC to a sedentary level, plaintiff suffered from alcoholism and depression. These nonexertional impairments are not accurately described in the guidelines. The ALJ erred when he relied solely on the guidelines to reach his disability determination.

### 1. Evaluating Disability When Plaintiff Suffers From Both Exertional and Nonexertional Impairments

Social Security Ruling 83–14 (Cumulative Edition 1983) ("SSR 83–14") outlines the proper procedure for evaluating cases where the claimant suffers from both exertional and nonexertional impairments. Under this Ruling, the ALJ follows a three step analysis. First, the ALJ should determine whether a finding of disabled is possible based on the claimant's exertional limi-

tations [1] alone. SSR 83–14 at 204. Second, if plaintiff is not disabled due to exertional impairments alone, the ALJ should consider whether the plaintiff is disabled under the guidelines in light of his age, education and work experience. *Id.* If a finding of disabled is still not indicated, the ALJ should proceed to the third step and determine whether other nonexertional factors substantially reduce the range of work that the claimant can do.

### a. Step One: Plaintiff's Exertional Impairments

▪ The ALJ found that plaintiff's exertional impairments (low back pain and fractured knee) were not sufficient to support a finding of disability and that plaintiff's RFC was reduced to the sedentary level by these impairments. We find that substantial evidence exists in the record to support the ALJ's conclusion. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

To be found capable of performing sedentary work, a claimant must be able to meet the physical requirements defined in the regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally [2] and other sedentary criteria are met.

20 C.F.R. section 404.1567.

Evidence of plaintiff's lower back and knee problems consists of a series of ortho-

---

**1.** "Exertional" limitations are those impairments which affect a person's ability to stand, walk, sit, lift, carry, push and pull. *See* SSR 83–14 at 202. Any job requirement that is not exertional is "nonexertional."

**2.** "Occasionally" means occurring from very little up to one-third of the time. SSR 83–10 at 179. Generally, periods of standing or walking should total no more than two hours per eight hour day. *Id.*

pedic examinations conducted between August 1981 and May 1985, a CT scan performed in July 1982, reports from the physician who treated plaintiff from October 1983 until June 1985, a Functional Capacities Evaluation completed by Dr. Dramov in June 1984, and plaintiff's own allegations of pain.

### (i) The Medical Evidence

Records from the orthopedic examinations repeatedly confirm that plaintiff suffers from chronic low back pain.[3] There is little clinical evidence, however, to support a finding that plaintiff's back injury was disabling.[4] Despite plaintiff's complaints of back pain, none of the doctors who examined plaintiff detected muscle spasm or curvature of the spine, and tests for back or radicular pain were consistently negative. (TR: 319, 347, 392, 395.) X-rays revealed no serious abnormalities. (TR: 348.)

Orthopedic clinic records also reveal that plaintiff suffers from chronic pain in his left knee. Clinical records, however, demonstrate no significant, disabling abnormalities. In an October 29, 1981 examination, only five months after the accident, plaintiff had full range of motion in the knee and no tenderness or instability was detected. (TR: 289.) Examinations in January and February of 1982 indicate that plaintiff suffered from a mild chondrosis (formation of cartilage-like tissue) around the knee, but that the knee was "doing well," with only occasional pain. (TR: 397, 395.) At a July 17, 1983 examination, plaintiff had full flexibility and extension of the knee, with no instability. The diagnosis was mild chronic left knee pain. (TR: 392.)

**3.** *See, e.g.,* TR: 320, 396, 392.

**4.** A CT scan of plaintiff's back reveal that plaintiff suffers from a herniated lumbar disc. (Plaintiff's Memorandum of Points and Authorities at 8.) Classical symptoms of this condition include local and radicular pain and postural and gait changes. The patient may develop curvature of the spine (scoliosis). He may limp, or walk with an "antalgic gait." Muscle spasms along the spine are also common. 4 C.J. Frankel, *Lawyer's Medical Cyclopedia* section 32.107 (1975).

In sum, while the orthopedic examinations confirm plaintiff's complaints of lower back pain and mild knee pain, the clinical findings fail to demonstrate that these impairments were disabling.

Plaintiff relies heavily on a Functional Capabilities Evaluation completed by Dr. Borina Dramov to show that his back injury precluded him from doing even sedentary work. (Plaintiff's Memorandum of Points and Authorities at 5, 9). Solely on the basis of a July 1982 CT scan of plaintiff's back, Dr. Dramov evaluated plaintiff's RFC as less than sedentary. (TR: 389.)

■ Although a doctor's opinion should be given substantial weight, it is not binding on the ALJ as long as he provides clear and convincing reasons for rejecting the opinion. *Coats v. Heckler,* 733 F.2d 1338, 1340 (9th Cir.1984); *Rhodes v. Schweiker,* 660 F.2d 722, 723–24 (9th Cir.1981). Here, the ALJ cited two main reasons for rejecting Dr. Dramov's findings. First, Dr. Dramov made her evaluation solely on the basis of a CT scan of plaintiff's back, without performing a physical examination on the plaintiff. (TR: 193.) Second, the ALJ noted that none of the clinical findings supported Dr. Dramov's opinion. (TR: 196.)

■ This Court finds that the ALJ was justified in rejecting Dr. Dramov's evaluation, in light of her limited knowledge of the plaintiff's condition, and because there is substantial clinical evidence indicating that plaintiff's back injury was not so severe as to be disabling.[5]

**5.** In reaching his conclusion that plaintiff was not disabled as a result of physical impairments, the ALJ also specifically rejected an opinion by Dr. Goosby, plaintiff's treating physician from October 1983 until June 1985. (TR: 196). The ALJ need not have gone so far. Dr. Goosby's report found plaintiff disabled due to a combination of spine degeneration and alcoholism. (TR: 437). The report does not specify, however, whether the back impairment or alcoholism was the chief reason for finding plaintiff disabled. Absent this information, plaintiff cannot cite Dr. Goosby's report to show that his back problem, considered alone, was disabling.

#### (ii) Plaintiff's Allegations of Pain

At the first hearing before the ALJ on January 17, 1983, plaintiff testified that his injuries continued to cause him significant pain and discomfort. He testified his back injury still causes numbness in his legs. (TR: 50.) He also stated that he can only sit for one hour and stand for thirty minutes before his back and left knee become stiff and painful. (TR: 63.)

The ALJ at the first hearing made a specific finding as to plaintiff's credibility. In his decision, the ALJ remarked that:

> The claimant alleges constant back and leg pain. At the hearing, he did not appear preoccupied with personal discomfort, and he exhibited no significant observable physical signs that could be related to constant pain.... [H]is ability to get about on a regular basis and otherwise function physically appears generally unimpeded. Based upon a thorough review of the medical record, the testimony and the claimant's appearance and demeanor, the allegation of severe, disabling pain is not found to be fully credible.

TR: 23.

■ Subjective pain may serve as the basis for establishing disability, even if there is no positive clinical evidence to support such a claim. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979); *Valdez v. Heckler*, 616 F.Supp. 933, 940 (D.C.Cal. 1985). An inability to work without pain, however, is not enough to show disability. *Valdez*, 616 F.Supp. at 940. If the ALJ doubts the plaintiff's credibility, he must fully articulate the reasons for this conclusion. *Karp v. Schweiker*, 539 F.Supp. 217 (N.D.Cal.1982).

The ALJ at the first hearing made a specific finding as to the credibility of plaintiff's allegations of pain, and determined that plaintiff's pain was not disabling. Although the record indicates that plaintiff is impaired by his pain, this Court finds that the ALJ determination is supported by substantial evidence.

In sum, there was enough evidence for a reasonable person to conclude that plaintiff's back and knee conditions, even considered in combination, *Stewart v. Harris*, 509 F.Supp. 31, 35 (N.D.Cal.1980), were not disabling. This finding does not suggest that plaintiff's physical impairments are not serious. As the ALJ conceded, plaintiff's injuries prevent him from doing all jobs except for those requiring minimal physical exertion.

#### b. Step 2: Effect of Age, Education and Work Experience on Plaintiff's Remaining Job Base

Since plaintiff is not disabled by his exertional impairments, the ALJ should consider how the "major functional and vocational patterns" of age, education, and work experience affect the claimant's remaining job base. SSR 83–14 at 204. Here, the ALJ can apply Tables 1, 2 or 3 in Appendix 2. *Id.*

Because, during the period in dispute, plaintiff was a "younger individual [6]," had only a marginal education,[7] and had experience in unskilled labor, plaintiff could not be found "Disabled" under Table 1 of Appendix 2. *See* 20 C.F.R. pt. 404, subpart P, app. 2, Rule 201.18.

#### c. Step Three: The Other Nonexertional Impairments

#### (i) In General

■ Since plaintiff cannot be found disabled solely on the basis of age, education and work experience, the ALJ should evaluate the effect of plaintiff's other nonexertional impairments (alcoholism and depressive neurosis) on his remaining sedentary job base.

Medical records document plaintiff's problems with alcohol and depression. The physician who discharged plaintiff from San Francisco General after his car acci-

---

6. Persons under age 50 are termed "younger persons." 20 C.F.R. sections 404.1563(b), 416.-963(b).

7. Plaintiff has a third grade education. The regulations describe this level of education as "marginal." 20 C.F.R. sections 404.1564(b)(2), 416.964(b)(2).

dent noted that plaintiff had a habit of heavy alcohol consumption. (TR: 299.) Dr. Stephen Karr, a clinical psychologist, examined plaintiff on November 12, 1982. Dr. Karr found that Jones was of borderline intelligence and that he suffered from depressive neurosis with alcohol addiction. He described plaintiff as "a man with minimal insight and emotional resources, [who] has never been involved in a psychotherapy relationship." Dr. Karr recommended that plaintiff attend an alcohol detoxification program and seek psychological counseling. Dr. Karr concluded that "independent employment would be difficult." (TR: 333.)

Outpatient records dated July 12, 1983 from San Francisco General Hospital noted that plaintiff consumed one-half gallon of gin every three days. (TR: 343.) On July 18, 1983, Dr. Eric Goosby of Southeast Health Center diagnosed plaintiff as suffering from alcoholic hepatitis with sequelae. (TR: 441.) On October 6, 1983, he officially found plaintiff disabled due to spine degeneration and alcoholism. (TR: 437.)

The ALJ concluded that plaintiff retained the RFC to perform unskilled entry level work until July 18, 1983, the date Dr. Goosby diagnosed plaintiff as suffering from alcoholic hepatitis with sequelae. This record, according to the ALJ, was the first to "immediately show alcoholism as one of [Jones'] major problems." (TR: 197.)

For two reasons, the ALJ's determination concerning the onset date of disability must be set aside and the case remanded for further findings. First, the ALJ failed to give clear and convincing reasons for disregarding Dr. Karr's uncontraverted opinion that, as early as November 1982, plaintiff's alcoholism and depression were severe enough to make "independent employment ... difficult." (TR: 333.) If the ALJ wishes to disregard an examining physician's opinion, he must make findings setting forth specific, legitimate reasons for doing so. *Fife v. Heckler,* 767 F.2d 1427, 1431 (9th Cir.1985).

The ALJ dismissed Dr. Karr's opinion because, although Dr. Karr had recommended that Jones seek psychological counseling in 1982, plaintiff did not do so until 1984. As Dr. Karr noted, however, Jones had minimal insight and emotional resources and had never been involved in a psychotherapy relationship. Considering these limitations, especially when coupled with plaintiff's limited intellectual capacity, it is understandable that plaintiff did not seek therapy on his own.

The ALJ also cited medical records from San Francisco General Hospital and from Dr. Goosby at Southeast Health Center, which failed to mention on-going mental abnormalities. Again, this evidence is not an adequate basis for disregarding Dr. Karr's opinion. Plaintiff's examinations at San Francisco General Hospital were conducted at the Orthopedic Clinic. Since physicians at that clinic were looking for physical, not mental difficulties, it is not surprising that they failed to note mental abnormalities. Furthermore, the Court is not convinced that Dr. Goosby's silence is sufficient to rebut the affirmative findings of Dr. Karr. As with the orthopedic records, Dr. Goosby's examinations focused on plaintiff's physical problems. Dr. Karr's examination, on the other hand, focused specifically on plaintiff's psychological well-being. Dr. Goosby's silence is simply not enough to override the findings of Dr. Karr.

Second, although the ALJ enumerated each of plaintiff's nonexertional impairments and found that neither one of them was disabling until July 1983, he did not make a specific finding as to the effect of the combination of these impairments on plaintiff's remaining RFC. When a claimant suffers from multiple impairments, the ALJ must make a specific and well-articulated finding as to the effect of the combination of impairments. *Stewart v. Harris,* 509 F.Supp. 31, 35 (N.D.Cal.1980). The ALJ erred when he failed to consider plaintiff's alcoholism and depression in combination.

The ALJ's finding that plaintiff was not disabled due to alcoholism and depression before July 18, 1983 is not supported by substantial evidence and is therefore set

aside and this case is remanded to the ALJ for further findings consistent with this Memorandum Decision.

### (ii) Use of a Vocational Resource

If the ALJ did not have a clear understanding of what effect plaintiff's alcoholism and depression had on the remaining job base, the ALJ should have used a vocational specialist or other vocational resource in making his determination. SSR 83–14 at 208. On remand, the ALJ is strongly encouraged to avail himself of these aids.

If the ALJ uses a vocational resource, and the plaintiff is found *not* to be disabled prior to July 18, 1983, the ALJ must include examples of occupation that plaintiff can do, and a statement of the incidence of such work, either in the region where the plaintiff lives or in several regions of the country. SSR 83–14 at 208.

### B. Onset Date

■ Lastly, when determining the onset date of plaintiff's disability, the ALJ should note that "the critical date is the *onset* of disability, *not* the date of diagnosis." *Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985) (emphasis in original). The fact that plaintiff is diagnosed as disabled as of a certain date does not mean he became disabled on that date. In the present case, due to the progressive nature of plaintiff's alcoholism and depression, the date of onset may have to be inferred. In these circumstances, the Secretary has stated:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. The judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83–20 at 111.

### III. CONCLUSION

The ALJ's finding of July 18, 1983 as the proper onset date is set aside. This case is remanded for further proceedings consistent with this Memorandum Decision. If the ALJ still concludes that Dr. Karr's testimony should be disregarded, he must give clear and convincing reasons for doing so. In addition, the ALJ must make a specific and well-articulated finding as to the effect of the combination of alcoholism and depression on plaintiff's remaining RFC. If the ALJ does not have a clear understanding as to the effect of these impairments on plaintiff's remaining job base, the Court strongly encourages the ALJ to use a vocational specialist or other vocational resource to aid in this determination. Furthermore, since plaintiff's alcoholism and depression are progressive in nature, the ALJ is encouraged to use a medical advisor when determining the onset date of disability.

IT IS SO ORDERED.